IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

HELEN ATKINS,

     Petitioner,

v.                               CASE NO. 4:14-cv-181-MW-GRJ

SECRETARY, DEPT.
OF CORRECTIONS,

     Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner initiated this case by filing a Petition for a Writ of Habeas
Corpus pursuant to 28 U.S.C. § 2254 challenging her jury-trial conviction in
Leon County for one count of arson of a dwelling, for which she is serving
a 30-year sentence. ECF No. 1. The Respondent filed a response to the
merits of the Petition, ECF No. 17, and Petitioner filed a reply, ECF No. 21.
Upon due consideration of the Petition, the response, the state-court
record, and the reply, the undersigned recommends that the Petition be
denied.[1]

## I. State-Court Proceedings

The procedural history of this case is summarized in the Response,

_____

[1] Because the Court may resolve the Petition on the basis of the record, the
Court has determined that an evidentiary hearing is not warranted. *See* Rule 8, Rules
Governing Habeas Corpus Petitions Under Section 2254.

and Petitioner does not dispute the accuracy of that summary.  *See* ECF No. 17, ECF No. 21.

An amended information charging Petitioner with one count of arson of a dwelling was filed on February 16, 2009, and her trial commenced on February 18, 2009.  ECF No. 17-1 at 4, 6.  Before the trial began, the prosecutor, Eric Abrahamsen, notified the court that he did not expect his first witness, Sylvester Brown, to be cooperative, since he was planning to marry the Petitioner, and envisioned that he might ask the court for permission to treat Mr. Brown as an adverse witness.  *Id.* at 11. Petitioner's attorney, Joel Remland, moved *in limine* to preclude the State from eliciting testimony that Mr. Brown attempted to drop the charges against Petitioner. The State responded that Brown's prior inconsistent statements would be explored, but not the charging decision.  *Id.* at 12-14.

The State's theory was that Petitioner and Brown argued on the night of the fire about Brown's alleged infidelity.  While Brown was asleep, Petitioner attempted to set the bed on fire.  Brown put the fire out with the help of Gilbert Holliday, a guest in the house. Petitioner's defense theory was that there was drinking and marijuana use on the night of fire, and that Brown was smoking in bed.  Petitioner's counsel sought to cast doubt on

the prosecution's ability to meet its burden of proof, in view of inconsistencies in the witnesses' statements. *Id*. at 21-27.

Brown testified that he was engaged to marry Petitioner. On the night of the fire, Brown was asleep. Upon waking and seeing a fire, he ran to get Holliday to help put it out. Both men "carried some things out for a little while . . . [to] let it air out" and went back to sleep once the fire was out. Brown indicated that his bed and the curtains close to the right side of his wall were on fire when he first awoke. Brown identified pictures showing areas damaged by fire. *Id* . at 30-31.

Brown testified that he did not see who started the fire. *Id.* He denied that he had made inconsistent statements about who started the fire. Brown was shown the sworn statement he made to police the morning after the fire in which he stated that he was sleeping in bed when Petitioner put a fire to the bed at his feet. Brown testified that he did not "mean it that way" because he had been "drinking and stuff like that." *Id.* at 33–34. He testified that he "probably" stated that when he tried to put the fire out Petitioner would start it again, but he was "halfway drunk" and he knew Petitioner would not try to hurt him. *Id*. at 34-35.

Brown was shown his deposition testimony, in which he testified that

Petitioner tried to set the mattress on fire and then, while outside the house, stuck burning paper through a window to set the curtains on fire. At trial, Brown maintained that the items that Petitioner tried to burn were outside the house the next morning, after he had removed them from the house to air out after discovering fire on the bed. *Id*. at 37-38. On cross-examination by Petitioner's counsel, Brown maintained that it was "very possible" that he fell asleep smoking a cigarette. *Id*. at 38-39. He denied that Petitioner had caused the fire damage to the mattress depicted in the photos because "she wasn't there," and had gone out with friends. *Id*. at 44.

Holliday testified that he knew Petitioner because they both stayed in Brown's house. *Id.* at 51. Holliday grew up with Brown, and was good friends with him. *Id.* Additionally, Holliday stayed at Brown's house periodically, and remembered staying there on the night of the fire. *Id.* On that night, Holliday woke up to hollering and screaming, and saw smoke in the hallway. *Id.* He went into the bedroom and saw the mattress on fire, with Brown trying to put it out. *Id.* at 52. Holliday helped put the fire out, but it rekindled and was extinguished again. *Id.* Holliday indicated he did not know how the fire started. *Id.*

Holliday saw Petitioner about an hour after putting the fire out, walking down the street. *Id.* Petitioner came to the house and exchanged words with Brown. *Id.* Holliday testified that he had been sitting near a plastic plant by the door inside the house, which Petitioner tried to light on fire with a cigarette lighter. *Id.* at 53. Petitioner got it to light, but Brown put it out. Holliday was not aware of any other fires that Brown put out that morning, but testified that Brown told him Petitioner tried to light the bedroom curtains inside the house on fire. *Id.*

On cross-examination, Holliday admitted that he had been drinking with Brown. The fire occurred more than a few hours after he went to sleep. *Id.* at 55–56.

TPD Officer Dave Gantt testified that he responded that morning to a call about someone screaming in the street. Upon arrival, Officer Gantt was told about a fire at Brown's address. *Id.* at 58. Gantt testified that inside the home he "saw a bedroom where a bed had been burning, or had burned, and some curtains . . . and a box spring underneath the mattress [were] burned." *Id.* Gantt identified pictures of the bedroom, which showed the mattress pulled off the bed and charred at the foot end, with burned up box springs. *Id.* Gantt testified that the box spring and mattress

were both in the bedroom, and that the mattress was significantly less burned than the box spring. *Id.* at 59. Gantt identified a picture of a charred window with the glass broken out of it, with charred curtains. *Id*. He testified that the burned curtains were just inside the window. *Id.* He further testified that the curtains were inside and hanging up, to his recollection, and that he did not see any burned material outside. *Id.*

Gantt interviewed Holliday and Brown when he arrived on the scene. *Id.* at 60. The court sustained an objection to testimony regarding what Brown told Gantt about how the fire started. *Id.* The State attorney then asked Gantt if Brown said anything about Petitioner starting the fire, and Gantt replied that Brown did. *Id.* Petitioner's counsel again objected, and the court directed the jury to disregard the statement. *Id.*

Gantt testified that he left to look for Petitioner after talking to Brown and Holliday. He returned to the house and found her in the street, where he placed her under arrest for arson and aggravated battery with a deadly weapon. *Id.* at 62. The State attorney asked Officer Gantt why he placed her under arrest, and Petitioner's attorney objected, noting a relevancy issue. *Id.* Out of the presence of the jury, the State made a proffer examination of Gantt. Gantt could not remember if he read Petitioner her

Miranda rights, but believed he had. Gantt stated he did not ask Petitioner

any questions, so he did not need to anyway. *Id.* at 64–65. On the way to

jail, Petitioner told Gantt he should not have arrested her because she did

not hit anyone or set any fires, and Petitioner further stated that Brown had

been cheating on her. Gantt had not asked Petitioner questions, but could

not recall if he had made any statements to her. *Id.* at 65–66.

Following Gantt's testimony, the court addressed Petitioner's right to

testify, and Petitioner affirmed on the record that she understood that it

was her decision to decide whether she wanted to testify. *Id*. at 69.

The State then called Cynthia Moore. Moore indicated that she knew

both Petitioner and Brown. She further indicated that she remembered the

fire, and noted an unusual commotion outside on that date. Moore did not

see the fire start, and testified that she was missing her newspaper, which

made her upset. Moore called the police because of the fire. When the

police were on location, Moore stated she saw Petitioner on the scene, and

that Petitioner "took off running" after she saw the police. When Petitioner

returned later, Officer Gantt approached her and put her in handcuffs.

Moore went into Brown's house and noticed a burned mattress, burned

curtains, and a burned plant. She testified the mattress and curtains were

still in the bedroom.  After the police left, Moore saw Brown and Holliday removing burned items from the house.  *Id.* at 71-74.

The State rested its case, and Petitioner's attorney moved for a judgment of acquittal on the arson charge.  He reiterated that there were no witnesses to the cause of the fire, and that Brown had testified that he did not see the cause of the fire.  Petitioner's attorney argued that the only evidence was of Petitioner attempting to burn the plastic plant near the doorway, which was more akin to criminal mischief.  *Id*. at 75-76.

The State argued that disregarding Brown's prior inconsistent statements, there was sufficient evidence to present a jury question.  The State specifically noted Holliday's testimony about Petitioner lighting a plant inside the house on fire, as well as Brown's testimony that Petitioner repeatedly tried to light the mattress and curtains on fire.  Both Gantt and Moore testified that the mattress and curtains were inside the house until after the officer left to take Petitioner to jail. *Id*. at 78–79.

The court denied the motion, referencing Holliday's testimony about Petitioner lighting the plant on fire, Brown's testimony about Petitioner lighting the curtains on fire from the window, and the fact that the box spring was more burned than the mattress.  The court also mentioned

Gantt's testimony that there was no burned material outside the house, as well as Brown and Holliday's conflicting testimony about the timing of events. *Id*. at 80-82. After consulting with counsel, Petitioner decided not to testify and Petitioner affirmed that she had enough time to discuss the decision with her attorney. *Id.*

The court read the jury instructions to the jury prior to closing arguments. *Id.* at 89-96. In closing, the State observed that Brown and Holliday both testified that Petitioner was trying to light fires in "multiple places." *Id.* at 99. The State also referenced Brown's testimony about Petitioner standing outside of the window lighting things on fire, stating that the curtains were property of the structure, which was clearly arson. *Id.* at 101. Moore testified that Petitioner ran when the police arrived, which the State argued indicated guilt. The State argued that the evidence showed that Petitioner lit the foot of the bed on fire, which was where the bed was burned, not by the headboard, which was what would have burned if Brown's story about smoking was true. Further, the State pointed out that no cigarettes were ever found in the area, and that the box spring under the mattress was "burned to a crisp," showing that the fire came from underneath the bed, not the top. *Id.* at 97-103.

Petitioner's attorney objected, asserting that the State was testifying. The court overruled the objection. The State again argued that the box spring showed the fire came from underneath the bed, which was consistent with Brown's written statements. Further, the State pointed to Brown's original statements and Holliday's testimony, which showed Petitioner lit the bed on fire, and did so again after it was put out. Holliday's testimony indicated that Brown had to put the curtain fires out from inside the house. The State noted Brown's conflicting statements, arguing that he was attempting to help Petitioner because they were engaged. The State argued that Brown realized his deposition statements were not helping Petitioner, so he changed his story to indicate that the fires were set outside of the dwelling. The State pointed out that Gantt's pictures showed the bed, mattress, box spring, and curtains all inside the bedroom when Petitioner was taken to jail. Gantt and Moore also testified they saw the objects inside the house, and Moore did not see Brown carrying the items out of the house until after Petitioner had been arrested. With all of the evidence added together, the State stated he was confident the jury would be able to find beyond a reasonable doubt all of the elements of arson of a dwelling (damage to a structure or its contents by

fire or explosion, the damage was caused willfully and unlawfully, the defendant willfully set things on fire, and the structure was a dwelling). *Id.* at 103-07.

Petitioner's counsel argued that the jury did not hear from an expert witness, and that "[cigarettes cause fires in beds all the time." Brown testified he was smoking in bed, and yet no one testified that they searched for cigarettes. Brown and Holliday, the only two people inside the house, testified that Petitioner did not start the fire inside the house. Petitioner's attorney focused on reliability and credibility, noting the changing testimony, the convicted felon status of Brown, and Holliday and Brown's drinking on the night of the fire. Brown's past statements were not reliable, and Holliday did not see Petitioner start the fire in the house. Holliday testified that he saw Petitioner try to light a plastic plant, however no plant was in the pictures shown to the jury. *Id.* at 107-15.

In rebuttal, the State urged jurors to use common sense, and that common sense indicated that the fires Petitioner was trying to start caused the damage. The State contended that no expert was needed to come in and tell the jury that a fire that burned the underside of a bed and box spring, barely reaching the top mattress at the foot of the bed, was caused

by Petitioner. Petitioner's counsel objected, but the court overruled the objection. The State argued that common sense answered whether a cigarette would go under the bed and start a fire. The State also pointed to Petitioner's counsel's argument that Brown was unreliable yet it was Brown who testified that he was smoking. The State argued the theory that Petitioner, believing Brown was cheating on her, started a fire in Brown's bed and than lit multiple other fires in a fit of rage. *Id*. at 115-18.

After the jury retired, Petitioner's counsel renewed his motion for a JOA. *Id*. at 120. The jury returned a guilty verdict and Petitioner was subsequently sentenced as a prison releasee reoffender to 30 years imprisonment. *Id*. at 121.

Petitioner appealed, asserting two issues: (1) whether the trial court erred in overruling Petitioner's objection to the State's closing argument, in which the State argued that the fire came from underneath the bed; and (2) whether the trial court erred in overruling Petitioner's objection to the State's rebuttal closing argument, in which the State argued that an expert was not necessary for the jury to conclude from the evidence that the fire started on the underside of the bed in the box spring. ECF No. 17-1 at 142-54. The First DCA affirmed, *per curiam*, without written opinion. ECF

No. 17-2 at 31.

Petitioner filed a motion for postconviction relief pursuant to Fla. R. Crim. P. 3.850, asserting 10 grounds for relief. *Id*. at 44-61. The court summarily denied relief on three grounds and ordered an evidentiary hearing on the others. *Id*. at 69-71. Petitioner was represented by appointed counsel and Petitioner, Brown, and Petitioner's trial counsel, Joel Remland, testified at the evidentiary hearing. *Id*. at 130-81; ECF No. 17-3 at 1-59. At the conclusion of the hearing, the court denied relief. *Id*. at 58. Petitioner appealed, and the First DCA affirmed, *per curiam*, without written opinion. *Id*. at 143.

The instant federal habeas petition followed. Petitioner asserts nine claims for relief, including one claim of trial court error and eight claims of ineffective assistance of trial counsel. ECF No. 1.

## II. Section 2254 Exhaustion Requirement

Before bringing a habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion. 28 U.S.C. § 2254(b)(1), (c). Exhaustion requires that prisoners give the state courts a "full and fair opportunity" to resolve all federal constitutional claims

by "invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). To properly exhaust a federal claim, a petitioner must "fairly present" the claim in each appropriate state court, thereby affording the state courts a meaningful opportunity to "pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation omitted).

When a petitioner fails to properly exhaust a federal claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred under state law, the claim is procedurally defaulted. *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999). Federal habeas courts are precluded from reviewing the merits of procedurally defaulted claims unless the petitioner can show either (1) cause for the failure to properly present the claim and actual prejudice from the default, or (2) that a fundamental miscarriage of justice would result if the claim were not considered. *Id*. at 1302, 1306. A fundamental miscarriage of justice exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Ward v. Hall*, 592 F.3d 1144, 1157 (11th Cir. 2010). To state a credible claim of actual innocence, a

petitioner must present new reliable evidence that was not presented at trial showing that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

### III.  Section 2254 Standard of Review

For claims that are properly exhausted, the Anti-Terrorism and Effective Death Penalty Act (AEDPA) imposes further limitations on the scope of this Court's review.   Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt v. Titlow, ___ U.S. ___,*  2013 WL 5904117, *4 (2013)(quoting  *Wood v.*

*Allen*, 558 U.S. 290, 301, 130 S.Ct. 841(2010)).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1); *see Burt*, 2013 WL 5904117, *4 (standard for reviewing claims of legal error by state courts is "highly deferential"). This standard "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights." *Id*. This highly deferential standard carries special force in habeas cases asserting ineffective assistance claims: "Especially where a case involves such a common claim as ineffective assistance of counsel under *Strickland*[2]—a claim state courts have now adjudicated in countless criminal cases for nearly 30 years—'there is no intrinsic reason why the fact that a man is a federal judge should make him more competent, or conscientious, or learned . . . than his neighbor in the state courthouse.'"

---

[2]*Strickland v. Washington*, 466 U.S. 668, 686 (1984) (holding that to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. A court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong).

*Id*. (quoting *Stone v. Powell*, 428 U.S. 465, 494, n. 35, 96 S.Ct. 3037 (1976)).

In view of the deference afforded to the state courts' adjudication of constitutional claims, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires 'a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Id*. (quoting *Harrington v. Richter*, 562 U.S. ___, 131 S.Ct. 770, 786–787 (2011). "'If this standard is difficult to meet'—and it is—'that is because it was meant to be.'" *Id*. (quoting *Harrington*, 131 S.Ct. at 786). "We will not lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Id*. (quoting *Harrington*, 131 S.Ct. at 786).

## IV.  Discussion

### A.  Trial Court Error Regarding State's Closing Argument

In her first claim, Petitioner asserts that she was deprived of her constitutional right to a fair trial when the trial court overruled an objection to the State's closing argument pertaining to the origin of the fire and the

lack of a need for expert testimony regarding the origin of the fire.  ECF No. 1 at 5.

Respondent contends that this claim is unexhausted, and is now procedurally defaulted, because Petitioner never specifically or by implication raised this claim as a federal constitutional issue in state court. ECF No. 17.  Petitioner disputes this assertion without citing to anything in the record that would support a conclusion that she raised the claim as a federal constitutional claim in state court.  *See* ECF No. 21.  Petitioner's appellate counsel cited only state cases in support of the appellate arguments, and there is no mention in the brief of any federal constitutional claim with respect to this issue.  The claim was raised as one invoking the appellate court's supervisory powers and not as a federal constitutional due-process claim.  *See* ECF No. 17-1 at 141.  On the basis of this record, the Court concludes that this claim was not exhausted as a federal constitutional claim in the state courts.  *See Pearson v. Sec. Dept. Corr.*, 273 Fed.Appx. 847 (11th Cir. 2008) (rejecting sufficiency-of-the-evidence claim as unexhausted where Petitioner's state-court filings cited exclusively to state cases, and all of his substantive arguments addressed Florida law).  Because Petitioner clearly would be barred from now pursuing this

claim in state court, it is procedurally defaulted and foreclosed from federal review absent a showing of cause and prejudice or a fundamental miscarriage of justice. Petitioner makes no claim that she can show cause and prejudice for the default, and there is nothing in the record that suggests that a fundamental miscarriage of justice would result if the Court does not consider the claim.

Even if Petitioner had exhausted this claim, she has not shown that the state court's rejection of the claim provides any basis for federal habeas review. It is well-settled that improper jury argument by the prosecution violates a defendant's constitutional right to a fair trial in some circumstances. *See, e.g., Cronnon v. State*, 587 F.2nd 246, 251 (5th Cir. 1978). "[T]he appropriate standard of review for such a claim on writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power.'" *Davis v. Kemp*, 829 F.2d 1522, 1527 (11th Cir. 1987). The Court applies a two-step process in reviewing such a claim: (1) the Court considers whether the argument was improper; and (2) whether any improper argument was so prejudicial as to render the trial fundamentally unfair. *Id*. at 1526. Thus, "'[t]he relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as

to make the resulting conviction a denial of due process.'"  *Id*. at 1526-27

(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)).  A trial is

fundamentally unfair if there is a reasonable probability that but for the

prosecutor's improper remarks, the outcome of the trial would have been

different.  *Williams v. Kemp*, 846 F2d 1276, 1283 (11th Cir. 1988).

In this case, Petitioner has failed to show that the State's closing

argument was improper or that she was prejudiced by the remarks.  The

State argued that the photographic evidence showed that the bed was

burned at the foot end and not near the head of the bed as might be

expected from a fire started by smoking.  The State further argued that the

photos showed that the box spring was "burned to a crisp", showing that

the fire started from underneath the bed, which is also inconsistent with

smoking in bed.  The State argued that such a conclusion could be

reached by application of common sense and that no expert testimony was

necessary.  As summarized above, this argument is based on reasonable

inferences from the testimony and evidence presented at trial.  Further,

Petitioner's counsel availed himself of the opportunity to challenge the

State's theory and inferences in his own argument.  Under these

circumstances, Petitioner has failed to show that the argument "'so infected

the trial with unfairness as to make the resulting conviction a denial of due process,'" *Davis*, 829 F.2d at 1526-27, or that there is a reasonable probability that but for the prosecutor's improper remarks, the outcome of the trial would have been different.  *Williams*, 846 F2d at 1283.

## B.  Ineffective Assistance Regarding Right to Testify

In her second claim, Petitioner contends that her counsel misinformed her regarding her right to testify by telling her that if she testified, the State would question her on the extent of her prior felonies.  ECF No. 1.

The state court rejected this claim on postconviction review based on the testimony at the evidentiary hearing.  Specifically, Mr. Remland testified "No.  Absolutely no way.  That's not the law.  It's inconceivable.  I would never tell any client that the prosecution could get into the nature of the convictions, unless they were to lie in response to the proper question . . . But I never told her that."  ECF No. 17-2 at 162.  He further testified that Petitioner never expressed any desire to testify.  Although Petitioner testified to the contrary, *id*. at 148, the state court found that Remland's testimony was credible and accepted his testimony.  The court also observed that at trial there was no equivocation in Petitioner's responses

that she was not going to testify.  Accordingly, the court found no deficient performance by counsel.  ECF No. 17-3 at 23-24.

"Determining the credibility of witnesses is the province and function of state courts, not a federal court engaging in habeas review.  Federal habeas courts have 'no license to redetermine credibility of witnesses whose demeanor was observed by the state court, but not by them.'" *Consalvo v. Secretary for Dept. of Corrections,* 664 F3d 842, 845 (11ᵗʰ Cir. 2011) (quoting *Marshall v. Lonberger*, 459 U.S. 422 (1983)).  Questions about the credibility of witnesses are questions of fact, and "the AEDPA affords a presumption of correctness to a factual determination made by a state court." *Id.*   It is Petitioner's burden to rebut the presumption of correctness by clear and convincing evidence. *Burt v. Titlow, ___ U.S. ___,* 2013 WL 5904117, *4.  Petitioner has failed to rebut the presumption of correctness afforded to the state court's credibility determination.

Further, the state court found that even if counsel was deficient there was no reasonable possibility that the outcome of the trial would have been different in view of the fact that, had she testified, Petitioner would have had to acknowledge 14 prior convictions in a case where the credibility of the witnesses was already in question due to changing stories.  ECF No.

17-3 at 23-24.

On this record, the undersigned concludes that Petitioner has failed to show that the state court's rejection of this ineffective-assistance claim was "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'"  *Burt,* 134 U.S. at 15.

## C.  Ineffective Assistance Regarding Expert Testimony

In her third claim, Petitioner asserts that her counsel was ineffective for failing to present an expert witness to testify regarding the statistics of people falling asleep with a lit cigarette, especially after drinking, and that the burns on the bed were consistent with that theory.  ECF No. 1 at 9.

In the habeas corpus context, "[c]omplaints concerning uncalled witnesses impose a heavy showing since the presentation of testimonial evidence is a matter of trial strategy and often allegations of what a witness would have testified to are largely speculative."  *United States v. Guerra*, 628 F.2d 410, 413 (5th Cir. 1980).

Petitioner's allegation about how an expert would have testified is wholly speculative.  Petitioner points to nothing in the record suggesting that an expert witness would have supported her theory regarding how the fire started, nor was such evidence presented at the evidentiary hearing.

Such speculative claims are not a proper basis for habeas corpus relief.

Further, in rejecting this claim on postconviction review the state court found that there was no deficient performance by counsel in failing to retain an expert. The scene had not been preserved and the only evidence available was the photographs of the scene, therefore there would have been nothing or counsel to retain an expert to examine. The court determined that an attempt to present expert testimony would not have survived a *Frye* challenge under such circumstances. The court found that counsel did the best with what he had, which was trying to create doubt about how the fire started by pointing out the conflicts in the testimony and suggesting that it could have been a cigarette, as Brown testified. The court found that there was no prejudice because there was no basis to conclude that an expert would have testified to anything helpful to Petitioner or even could have testified after a *Frye* challenge. ECF No. 17-3 at 29-31.

Petitioner conclusionally alleges that an expert would have created reasonable doubt in the jurors' minds, but such conclusional assertions are insufficient to support a claim for habeas corpus relief. On this record, the undersigned concludes that Petitioner has failed to show that the state

court's rejection of this claim was "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Burt,* 134 U.S. at 15.

## D. Ineffective Assistance Regarding Speedy Trial Rights

In her fourth claim, Petitioner contends that her trial counsel failed to assert her speedy trial rights. She alleges that she was arrested on June 15, 2008, and her trial did not begin until February 16, 2009, 284 days after arrest. She contends that Florida law required that her trial occur no more than 175 days after her arrest. ECF No. 1 at 9-10.

To the extent that Petitioner seeks to assert a violation of Florida's speedy trial rules in this case, apart from her ineffective-assistance claim, "that type of claim is not cognizable on federal habeas review because it only involves state procedural rules rather than errors of federal constitutional dimension." *Sneed v. Fla. Dept. of Corr.,* 496 Fed.Appx. 20, 25, 2012 WL 5417103, *4 (11th Cir. 2012). Although ineffective assistance is a federal constitutional claim which federal courts consider in light of the clearly established rules of *Strickland,* when "the validity of the claim that [counsel] failed to assert is clearly a question of *state* law . . . we must defer to the state's construction of its own law." *Alford v. Wainwright,* 725

F.2d 1282, 1291 (11th Cir.1984) (affording deference to state court's decision "to the extent it decide[d] the validity of [the petitioner's] underlying state law claims") (*superseded on other grounds*); *see also Callahan v. Campbell,* 427 F.3d 897, 932 (11th Cir.2005) (holding that "[i]t is a fundamental principle that state courts are the final arbiters of state law, federal habeas courts should not second-guess them[.]" (internal quotation and citation omitted)).  In the same vein, "[a] state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." *McCullough v. Singletary,* 967 F.2d 530, 535 (11th Cir.1992); *Hunt v. Tucker,* 93 F.3d 735, 737 (11th Cir.1996) (federal courts entertaining petitions for writs of habeas corpus must follow the state court's interpretation of a state law absent a constitutional violation).

Here, the state court determined that counsel reasonably waived Petitioner's speedy trial rights under state law, based on his testimony that he was not ready for trial when the case was reassigned to him. Specifically, counsel needed to take Brown's deposition.  The state court found that counsel was not deficient because it was a legitimate tactical decision in order to prepare for trial.  ECF No. 17-3 at 43.  The court further

found that "there's not one scintilla of evidence before this Court that the case would have been better by doing it quicker," and therefore Petitioner had failed to demonstrate prejudice. *Id*. Petitioner has pointed to nothing in the record that supports her conclusional assertion that counsel was ineffective with respect to her speedy trial rights. *See* ECF Nos. 1, 21. On this record, the undersigned concludes that Petitioner has failed to show that the state court's rejection of this claim was "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Burt,* 134 U.S. at 15.

## E. Ineffective Assistance Regarding Hearsay Testimony

Petitioner contends in her fifth claim that her counsel was ineffective for failing to object to Holliday's hearsay testimony. ECF No. 1. Specifically, Petitioner argues that counsel should have objected to Holliday's testimony that Brown said Petitioner tried to light the curtains on fire. Petitioner argues that the testimony did not fall within a hearsay objection. ECF No. 21 at 5-6.

In rejecting the claim on postconviction review, the state court determined that in light of the context of the testimony, the statement likely occurred contemporaneously with the fire and likely fell within a hearsay

exception as an "excited utterance."  The court further found, however, that regardless whether the statement fell within an exception counsel's failure to object was not prejudicial in view of the other evidence presented at trial. Brown had already testified that Petitioner attempted to set the curtains on fire.  At the evidentiary hearing, counsel testified that he probably did not object to the testimony because he "wouldn't think that would be harmful." The court determined that counsel's decision not to object was a reasonable tactical decision, and that it was not appropriate to "flyspeck" a lawyer's performance.  The court further concluded that there was "no way to say" that the one statement was prejudicial such that it undermined confidence in the outcome of the trial because it was "one small line during the entire trial that nobody made a feature of anything and nothing was said."  ECF No. 17-3 at 46-47.

Petitioner points to nothing in the record that supports her claim that the state court erred in its determinations on this issue.  On this record, the undersigned concludes that Petitioner has failed to show that the state court's rejection of this claim was "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'"  *Burt,* 134 U.S. at 15.

## F. Ineffective Assistance Regarding Timing of Jury Instructions

Petitioner contends that her counsel should have objected because the trial court instructed the jury prior to having closing arguments. ECF No. 1. The state court summarily rejected this claim on postconviction review because pursuant to Fla. R. Crim. P. 3.390 the court may instruct the jury on the law of the case before or after closing arguments, and thus any objection would have failed. ECF No. 17-2 at 69.

This Court defers to the state court's interpretations of state law. It is clear that the procedure employed by the court was permissible under state law and that there was no basis for counsel to object. Counsel cannot be deemed to have performed deficiently for not asserting a meritless objections. Petitioner has failed to show that the state court's rejection of this claim was "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Burt,* 134 U.S. at 15.

## G. Counsel's Failure to Object to Closing Arguments

Petitioner contends that counsel failed to object to"inappropriate comments" by the State in closing argument. Specifically, Petitioner argues that the State misrepresented Holliday's testimony by contending

that the testimony showed Petitioner set a plastic plant/flower on fire that caused damage, when in fact Holliday testified that she *tried* to set a plant on fire.  ECF No. 21.  Petitioner also contends that the State shifted the burden of proof to her by inferring that Petitioner was required to prove that the victim was smoking in bed.  *Id.*

The state summarily rejected this claim on postconviction review without an evidentiary hearing.  The court reviewed the trial record and found that the first statement was an accurate representation of Holliday's testimony.  The court further found that the second challenged statement was permissible rebuttal to defense counsel's closing argument, suggesting that the fire was caused by Brown smoking in bed.  ECF No. 17-2 at 70.

As summarized above, Holliday testified that he had been sitting near a plastic plant by the door inside the house, which Petitioner tried to light on fire with a cigarette lighter after she returned to the house.  ECF No. 17-1 at 53.  Petitioner got it to light, but Brown put it out. *Id*.  Thus, the state court correctly found that the State's closing argument on this point was accurate.  Further, as the state court found, the State's rebuttal argument properly challenged the defense theory that the fire was caused by a

cigarette, and did not shift the burden of proof to Petitioner. Petitioner has failed to show that the state court's summary rejection of this claim was "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Burt,* 134 U.S. at 15.

## H. Ineffective Assistance for Failing to Present "Extrinsic Evidence"

Petitioner contends that counsel was ineffective for failing to specifically point to photos showing the mattress up close and far away, that also showed a cigarette butt below the mattress. ECF No. 1.

On postconviction review, the state court reviewed the photographs in question and found that they did not reliably depict a cigarette. The court found that in view of the nature of the photographs, it was reasonable for counsel to make the argument that it was plausible the fire could have been started by a burning cigarette without explicitly pointing to an object that may or may not have been a cigarette butt in the photographs. ECF No. 17-3 at 57-58. Because counsel made an argument that advanced the defense theory, and utilized the available photographs, the court found that counsel was not deficient and there was no prejudice to Petitioner. *Id*.

Although Petitioner conclusionally argues that the state court erred, she has failed to show that the state court's rejection of this claim was "so

lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Burt,* 134 U.S. at 15.

### I. Cumulative Error

Petitioner contends that counsel's cumulative errors deprived her of a fair trial. ECF No. 1. The state court rejected this claim because it found no independent error in Petitioner's other claims, and therefore there could be no cumulative error. ECF No. 17-3 at 58.

In rejecting a similar "cumulative error" argument made by a § 2254 petitioner, the Eleventh Circuit has stated, "The Supreme Court has not directly addressed the applicability of the cumulative error doctrine in the context of an ineffective assistance of counsel claim." *Forrest v. Fla. Dep't of Corr.*, 342 F. App'x. 560, 564 (11th Cir. 2009) (*per curiam*). The *Forrest* panel further noted "[h]owever, the Supreme Court has held, in the context of an ineffective assistance claim, that 'there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt.'" *Id.* at 564–65 (quoting *United States v. Cronic*, 466 U.S. 648, 659 n.26 (1984)); *see also Spears v. Mullin*, 343 F.3d 1215, 1251 (10th Cir. 2003) ("Because the sum of various zeroes remains zero, the claimed prejudicial

effect of their [the petitioners'] trial attorneys' cumulative errors does not warrant habeas relief.").

Petitioner has not demonstrated that any of her trial counsel's alleged errors, considered alone, rose to the level of ineffective assistance. Therefore, there are no errors to accumulate. Petitioner was not denied effective assistance of counsel, and she has not demonstrated his trial was fundamentally unfair. *Walls v. McNeil*, No. 3:06-cv-237-MCR, 2009 WL 3187066, at *30–*31 (N.D. Fla. Sept. 30, 2009) ("As previously discussed, none of the alleged errors of trial counsel, considered alone, satisfy the threshold standard of ineffective assistance of counsel. Therefore, there are no errors to accumulate. Petitioner was not denied effective assistance of counsel, and he has not demonstrated that his trial was fundamentally unfair.").

Accordingly, Petitioner's ninth claim for relief has no merit. The Court therefore concludes that the state court's denial of relief was not unreasonable or lacking in justification, so Petitioner is not entitled to federal habeas relief on this ground.

## V. Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue

or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

## VI. Conclusion

For the foregoing reasons, it is respectfully **RECOMMENDED** that the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254,  ECF

No. 1, should be **DENIED** and a COA should be **DENIED.**

**IN CHAMBERS** this 31ˢᵗ day of July 2017.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.